_____

No. 96-1820
_____

United States of America,          *
                                   *
          Appellee,                *
                                   *     Appeal from the United
     v.                            *     States District Court for
                                   *     the District of South
Lawrence "Speedy" Goodlow,         *     Dakota.
                                   *
          Appellant.               *

_____

Submitted: December 10, 1996

Filed: January 28, 1997
_____

Before BOWMAN and HEANEY, Circuit Judges, and SMITH,[1] District Judge.
_____

SMITH, District Judge.


     Following a jury trial, Lawrence "Speedy" Goodlow ("Appellant") was
convicted of two counts of aggravated sexual abuse in violation of 18
U.S.C. §§ 1153 and 2241(a).  On appeal, Appellant alleges that (1) there
was insufficient evidence to support his conviction, (2) the prosecutor
engaged in improper argument, and (3) the District Court[2] abused its
discretion in allowing "repeated" leading questions of the victim.  For the
reasons set forth below, we affirm Appellant's conviction.


_____

     The Honorable Ortrie D. Smith, United States District Judge
for the Western District of Missouri, sitting by designation.

     The Honorable Charles B. Kornmann, United States District
Judge for the District of South Dakota.

## I. BACKGROUND

When viewed in the light most favorable to the government,[3] evidence at trial demonstrated that during the Spring and early Fall of 1994, Appellant and his wife (Katie Goodlow) lived next door to his mother-in-law's (Cecilia Cook) house. Both houses are located within the boundaries of the Crow Creek Indian Reservation. Robert Cook (Katie's brother and Cecilia's son) lived with Cecilia. Robert was 38 years old at the time of the events at issue, but is borderline mentally retarded and has the IQ consistent with that of a someone between the ages of ten and thirteen. Tr. at 75-79.[4] On August 1, 1994, Cecilia was temporarily admitted to a nursing home. While admitted, Cecilia arranged for Robert to stay with Appellant and his wife. At the time, one of Katie's sisters (Loyalee Flute) and her husband (David Flute) were also living with Appellant and his wife.

On August 26, 1996, Appellant and Robert engaged in oral and anal sex. Robert testified that Appellant "raped me, and pulled down my pants, and threatened to kill me." Tr. at 90. He also testified that he did not want to engage in sex with Appellant, but Appellant held him down and made him participate. Tr. at 91, 93. At one point, Robert ran outside the house, but Appellant ran after him, caught him and hit him. Tr. at 92, 93. Appellant also told Robert that he would kill him if he told anyone what they had done. Tr. at 93.

---

Claims for insufficiency of the evidence require this Court to examine the evidence in the light most favorable to the government, giving it the benefit of all reasonable inferences. E.g., United States v. Suppenbach, 1 F.3d 679, 681-82 (8th Cir. 1993).

"Tr. at __" is a reference to the transcript of the trial. "C.Tr. at __" is a reference to the transcript of the closing argument.

2

Robert told Loyalee about the incident, and she and her husband took Robert to the police station. Tr. at 98. Later that evening, Loyalee and a police officer from the Bureau of Indian Affairs (Victor Ziegler) took Robert to the emergency room at the Mid Dakota Hospital. Robert was examined and asked questions by a nurse (Janet Lutter) and a doctor (Theodore Matheny). Robert told Nurse Lutter that his brother-in-law raped him and threatened to kill him, Tr. at 108-09, and told Doctor Matheny that he had been threatened, but did not say who had made the threat. Tr. at 133. Both Nurse Lutter and Dr. Matheny observed a rash or bruise on the right side of Robert's rectal area, Tr. at 124, 132, 135. Dr. Matheny opined that the rash/bruise was consistent with sexual abuse over a period of time and that Robert was the victim of sexual assault. Tr. at 132-35.

On March 30, 1995, Special Agent Paul Pritchard of the FBI commenced his investigation into this case. On April 7, Agent Pritchard contacted Appellant for the purpose of interviewing him; with Appellant's assent, the two drove to the police department for this purpose. Appellant admitted[5] engaging in oral and anal sex with Robert, and that he "intimidated" Robert into agreeing to have sex. Appellant elaborated by explaining that Robert liked to drink beer, and that Appellant withheld beer in order to persuade Robert to have sex with him. Tr. at 40-44. However, Appellant denied threatening Robert in any way in order to force him to engage in sex. Agent Pritchard asked Appellant if he would be willing to sign a written statement; Appellant agreed to sign, but not actually write, a statement. Agent Pritchard wrote a statement for Appellant to sign; the statement declares, *inter alia*, that Appellant and Robert "had oral sex numerous times, and anal sex twice," that the first incident of anal sex occurred in Spring 1994 and the second occurred in August 1994, and that all the incidents occurred in a house located on the Creek Indian Reservation. The

---

Appellant does not appeal the admissibility of his statement.

3

statement also declared that Appellant was an American Indian.  Finally, the statement related  Appellant's explanation about his use of beer to persuade/encourage  Robert to engage in sex and his denial that force was ever used.  Appellant read and signed the statement after Agent Pritchard finished writing it.

## II.  DISCUSSION

### A.  Sufficiency of the Evidence

The substance of the crime with which Appellant was convicted is found in 18 U.S.C. § 2241(a), which makes it a crime to cause another person to engage in a sexual act through the use of force or through threats of death, serious bodily injury or kidnaping.  The provisions of § 2241(a) are applicable in this case by virtue of 18 U.S.C. § 1153, which provides that any Indian who commits a crime under § 2241(a)[6] "within the Indian country, shall be subject to the same laws and penalties as all other persons committing" that offense.  The interplay of these two sections establishes that the elements of the crime were (1) Appellant was an Indian, (2) he caused another to engage in a sexual act, (3) he used force or the threat of force to cause the other individuals to engage in the sexual act, and (4) the events occurred on Indian land.

Appellant does not dispute the sufficiency of the evidence with respect to the first, second or fourth of these elements; indeed, evidence supporting these elements was presented in Appellant's testimony and in the statement he provided to Agent Pritchard.  Instead, Appellant contends that there was insufficient evidence to prove beyond a reasonable doubt that he used force or the threat of force.  His argument is predicated on the fact that Robert contradicted himself during his testimony, and at times

_____

More specifically, § 1153 includes among a list of crimes any "felony under chapter 109A," and § 2241 is the first section in chapter 109A.

4

admitted that Appellant had not made him do things he did not want to do and that the only threats Appellant made related to the withholding of beer. Appellant also contends that the victim was scared of his sister, Loyalee, that Loyalee not only disliked Appellant but had a motive to create legal difficulties for him, and that Robert had been coached and coerced by her to make claims and deliver testimony against Appellant.

It is true that Robert gave contradictory answers. It is also true that there is some evidence that would have permitted the jury to believe that Loyalee disliked Appellant. However, it is the jury's job -- not ours -- to decide issues that relate to the credibility of witnesses. "The verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to conclude guilt beyond a reasonable doubt. Decisions regarding the credibility of witnesses are to be resolved in favor of the jury's verdict." United States v. Uder, 98 F.3d 1039, 1045 (8th Cir. 1996)(citation omitted). The jurors were made aware of all factors bearing on the credibility of witnesses and made a decision as to what to believe. After reviewing the record in the light most favorable to the verdict, we cannot conclude that reasonably minded jurors *must* have had a reasonable doubt as to Appellant's guilt. Cf. United States v. McCarthy, 97 F.3d 1562, 1571-72 (8th Cir. 1996) (rejecting claim of insufficiency of the evidence based on "discrepancies in the testimony of the government witnesses, a strong motive to fabricate, the government witnesses' histories of drug and alcohol abuse, and the fact that the government witnesses received favorable deals from the government in return for testifying against the appellants.").

### B. Prosecutorial Misconduct

At various times, the prosecutor referred to the statement Appellant made to Agent Pritchard as a "confession." In particular, the prosecutor referred to it as a confession when he requested that it be admitted into evidence and during closing

5

argument. Objections to this characterization were overruled and, though no curative instructions were given, the trial judge did declare (in the presence of the jury) that "it's up to the jury to make that determination. That's Mr. Seiler's interpretation of it. The jury may well find otherwise. And I realize that's not your interpretation of it, but that will be up to the jury to decide." C.Tr. at 6-7. Appellant contends that the prosecutor's characterization was improper because he never admitted to using force or the threat of force to compel Robert Cook to engage in sexual acts.

We examine claims of improper prosecutorial comments by determining (1) whether the comments were actually improper, and (2) if the comments were improper, whether they prejudicially affected the Defendant's right to a fair trial. <u>United States v. Cannon</u>, 88 F.3d 1495, 1502 (8th Cir. 1996). Initially, we are not entirely convinced that the prosecutor's characterization amounted to misconduct. Appellant did confess to three of the four elements of the crime with which he was charged: he admitted that he was an Indian, that he caused Robert Cook to engage in sexual acts with him, and that the events in question occurred on the reservation. "A confession is an acknowledgment in express words, by the accused in a criminal case, of the truth of the guilty fact charged or of some essential part of it." <u>Opper v. United States</u>, 348 U.S. 84, 90 n.7 (1954); <u>see also</u> <u>Noland v. United States</u>, 380 F.2d 1016, 1017 n.3 (10th Cir.), <u>cert. denied</u>, 389 U.S. 945 (1967); <u>but see</u> <u>Niolek v. Ashe</u>, 694 F.2d 282, 291 (1st Cir. 1982) (acknowledging distinction between confession of guilt to a crime and an admission to some of the elements); <u>Gladden v. Unsworth</u>, 396 F.2d 373, 376 n.2 (9th Cir. 1968) (same). Whether a statement given to law enforcement officials should be referred to as a confession or an admission appears, at best, to be a question of semantics and not a potential ground for misconduct.

Assuming, arguendo, that the use of the term "confession" was improper, we conclude that Appellant's right to a fair trial was not comprised. The jury was aware that Appellant denied, both at

6

trial and in his statement, that he used force or the threat of force. In context, the prosecutor's comments did not have the potential to mislead the jury into believing otherwise. Moreover, we note the trial judge's comments, although not formally identified as a curative instruction, made clear that the jury would decide the evidentiary value of the statement. Finally, we see no basis for concluding that the jury was led to believe that the government did not have to prove that Appellant used force or the threat of force to cause Robert Cook to engage in sex. Having reviewed the entire transcript, we are not persuaded that the jury's verdict was improperly affected by the terms employed by the prosecutor, and Appellant was not deprived of his right to a fair trial.

## C. Leading Questions

Appellant's final argument focuses on the prosecutor's use of leading questions when conducting his direct examination of Robert Cook. In light of Robert Cook's mental retardation, Appellant does not dispute that leading questions were permissible pursuant to Fed. R. Evid. 611(c). Instead, Appellant contends that the prosecutor was permitted to use more leading questions than was necessary.

"The use of leading questions is a matter left to the discretion of the district court." United States v. Butler, 56 F.3d 941, 943 (8th Cir.), cert. denied, 116 S. Ct. 322 (1995)(quotation omitted). Obviously, the trial court is in a better position than we are to determine the emotional condition and forthrightness of the witness and the need for counsel to use leading questions to develop the witness's testimony. E.g., United States v. Nabors, 762 F.2d 642, 651 (8th Cir. 1985). Upon reviewing the transcript, we discern no abuse of the trial court's discretion in permitting the use of leading questions.

## III. CONCLUSION

For the foregoing reasons, Appellant's convictions are affirmed.

A true copy.

    Attest:

        CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.