# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 96-2891

———————

United States of America,

    Plaintiff - Appellee,

v.

Frank Cournoyer,

    Defendant - Appellant.

\*   Appeal from the United States
\*   District Court for the
\*   District of South Dakota.

———————

Submitted: February 11, 1997

Filed: July 9, 1997

———————

Before MAGILL, BEAM, and LOKEN, Circuit Judges.

———————

LOKEN, Circuit Judge.

Frank Cournoyer appeals his conviction for aggravated sexual abuse of a sixteen-year-old girl on the Yankton Sioux Indian Reservation in violation of 18 U.S.C. § 2241(a)(1). His challenge to the district court's[1] jurisdiction under 18 U.S.C. § 1151 is foreclosed at this stage by our recent decision in Yankton Sioux Tribe v. Southern Mo. Waste Mgmt. Dist., 99 F.3d 1439 (8th Cir. 1996), cert. granted, 65 U.S.L.W. 3809 (U.S. June 9, 1997) (No. 96-1581). He also challenges the sufficiency of the evidence, the exclusion of defense witness testimony at trial, and the denial of his motion to suppress incriminating statements. We affirm.

---

[1]The HONORABLE LAWRENCE L. PIERSOL, United States District Judge for the District of South Dakota.

## I. Sufficiency of the Evidence.

Cournoyer argues that the evidence was insufficient to convict him of aggravated sexual abuse. The critical issue at trial was whether Cournoyer forced his daughter's friend, M.K., to have sex with him (force being an element of a § 2241(a)(1) offense), or whether the two had consensual sexual intercourse.

On October 3, 1995, Cournoyer's fifteen-year-old daughter, Harmony, brought her friend M.K. home to spend the night. M.K. testified that she was alone in the living room at about midnight, attempting to sleep, when Cournoyer returned home after drinking. According to M.K., Cournoyer lay down beside her and touched her sexually, and then held her down, removed her clothing, and forcibly had sexual intercourse with her. M.K. testified that she screamed out in protest. Harmony came into the room, called M.K. a whore, and said M.K. "wanted to do it." Distraught, M.K. ran outside, vomited, and attempted suicide with a butcher knife. The incident was uncovered some weeks later when an English teacher read M.K.'s description of the rape in her school journal and notified the school's guidance counselor, who in turn interviewed M.K. and contacted law enforcement officials.

The government's trial witnesses also included M.K.'s English teacher, the school counselor, and F.B.I. Agent Matthew Miller, who had separately interviewed M.K. and Cournoyer. Agent Miller's account of his interview with M.K. supported her trial testimony. Agent Miller further testified that Cournoyer initially denied having sexual intercourse with M.K., but when Miller said they should assume M.K. was sixteen years old, Cournoyer admitted they had had consensual sexual intercourse.

2

The defense called three of Cournoyer's children who were in the home on the night in question. Harmony and her younger sister, Francesca, were not in the room with M.K. and Cournoyer during the alleged assault, but they contradicted M.K.'s version of what happened immediately thereafter. Harmony also testified that M.K.'s brother bought M.K. a six-pack of beer which she drank shortly before Cournoyer returned home. In rebuttal, the government called M.K.'s brother, who denied that he had bought beer for M.K. that day. Francesca corroborated the late night beer drinking and also accused M.K. of smoking marijuana the previous afternoon. Their younger brother, Chetan, who was sleeping in the room where the alleged rape occurred, testified that he heard nothing, which tended to contradict M.K.'s testimony that she screamed in protest during Cournoyer's assault.

On appeal, Cournoyer argues that the evidence was insufficient because the jury's verdict was based solely on the testimony of M.K., who had consumed beer and smoked marijuana that day; because there was no physical evidence of rape; and because others who were asleep in the small trailer home did not awaken despite M.K.'s claim that she screamed loudly during the rape. In reviewing this issue, we must "view the evidence in the light most favorable to the jury verdict and accept all reasonable inferences from the evidence which tend to support the jury verdict." United States v. Has No Horse, 11 F.3d 104, 106-07 (8th Cir. 1993). Cournoyer's summary of the evidence overlooks his admission to FBI Agent Miller, the consistency with which M.K. told and retold her version of the events in question, and the government's rebuttal witness, who, if believed, casts substantial doubt on Harmony's credibility. In the end, the trial turned on the credibility of M.K., and to a lesser extent on the competing credibility of Harmony and Francesca. "[I]t is the jury's job -- not ours -- to decide issues that relate to the credibility of witnesses." United States v.

<u>Goodlow</u>, 105 F.3d 1203, 1206 (8th Cir. 1997).  Viewing the record in the light most favorable to the verdict, rational jurors could have found Cournoyer guilty beyond a reasonable doubt.

## II.  Rulings Limiting the Daughters' Testimony.

Cournoyer argues that the district court abused its discretion by excluding two portions of the testimony offered by his daughters, Harmony and Francesca.  Both offers were intended to impeach M.K.'s credibility, but they raise different evidentiary issues so we consider them separately.

**A. Harmony.**  Harmony's direct testimony for the defense included the following:

> Q    . . . When [M.K.] said that your dad had raped her, why didn't you get excited about it?
>
> A    Because I knew it wasn't true.
>
>         *   *   *   *   *
>
> Q    Did you take her seriously?
>
> A    No.  She always accuses guys of that.
>
> Q    Has she done that before?
>
> A    Yes.
>
> Ms. Tapken:  I object on the grounds of relevancy.
>
> The Court:  Just a moment.  That question and the answer is stricken.  The objection is sustained and the jury is instructed to disregard both the question as well as the answer.

Cournoyer argues that the district court abused its discretion in excluding this testimony because Harmony was offering relevant

4

evidence that M.K. had falsely accused others of rape in the past, and such evidence is not barred by the "rape shield" exclusion in Rule 412 of the Federal Rules of Evidence.

The government responds that evidence of prior false rape allegations is barred by Rule 412 because such evidence is "inseparable from evidence of the victim's past sexual behavior, which [Rule 412] was designed to exclude." United States v. Provost, 875 F.2d 172, 178 (8th Cir.), cert. denied, 493 U.S. 859 (1989). However, Rule 412 was amended in 1994, after our decision in Provost. According to the Advisory Committee's Notes, under the amended Rule, "[e]vidence offered to prove allegedly false prior claims by the victim is not barred by Rule 412." Although the relevant textual change to Rule 412 does not lead us unambiguously to the Advisory Committee's conclusion,[2] the Committee's Notes have interpretive weight and rather strongly suggest that this aspect of our decision in Provost has been legislatively overruled.

We conclude that we may leave for another day the question whether evidence of prior false rape accusations must survive the rigors of Rule 412 scrutiny. Assuming that Rule 412 does not apply, then past false rape accusations may perhaps be "[e]vidence of a pertinent trait of character of the victim of the crime offered by the accused." FED. R. EVID. 404(a)(2). But if a character trait is pertinent, it must still be proved in accordance with FED. R. EVID. 405 -- either by admissible reputation or opinion testimony, see Rule 405(a), or, if the trait is an essential element of Cournoyer's defense, by specific prior conduct, see Rule 405(b). Here, the question put to Harmony and her stricken answer

---

[2]The former Rule 412 made inadmissible "reputation or opinion evidence of the past sexual behavior of an alleged victim." The amended Rule excludes "[e]vidence offered to prove that any alleged victim engaged in other sexual behavior."

meet neither criterion. If viewed as opinion testimony regarding M.K.'s reputation, there was no foundation laid for Harmony's opinion; if offered as specific conduct proving a character trait of false rape accusations, even if potentially admissible on that ground, the testimony lacked sufficient specificity. <u>See generally</u> Harriet R. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 MINN. L. REV. 763, 858-63 (1986). In either case, the ruling at issue was correct, and defense counsel's failure to follow up, for example, with foundation testimony to support an opinion as to reputation, or with an offer of proof to show relevant, specific prior conduct, leaves us nothing but that initial ruling to review.

**B. Francesca.** During Francesca's direct testimony for the defense, the following was offered to impeach M.K.'s testimony that after the rape she attempted to slit her wrists with a kitchen knife because she felt angry, upset, and wanted to die:

Q    What kind of a mark, if any, did she make on her wrists?

A    It looked just like a little scratch.

Q    Did you think she was serious about committing suicide?

A    No, because she tried it before.

*   *   *   *   *

Q    If [M.K.] had testified that she tried to commit suicide at least three times before that, would that surprise you?

A    No.

Q    In other words, she does that all the time?

A    Yes.  She just does it to get attention.

> Q     Do you think the statement she made about your dad raping her was another attempt to get attention?
>
> A     Yes.
>
>     Ms. Tapken:  I'm going to object on the grounds that it's speculation.
>
>     The Court:  The answer is stricken.  The jury is instructed to disregard . . . the question as well as the answer.

Cournoyer argues that the court abused its discretion in excluding this opinion testimony because Francesca knew M.K. well enough to know "when she is putting on an act."

Opinion testimony by a lay witness "is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."  FED. R. EVID. 701.  Here, the district court did not abuse its substantial discretion regarding the admission of evidence.  Francesca's testimony that M.K. had a history of attempting suicide to gain attention did not provide a rational basis for opining that M.K. had falsely accused Cournoyer of rape.  Thus, the excluded question and answer would not have helped the jury determine the critical facts at issue.

### III. Cournoyer's Incriminating Statement.

Prior to trial, Cournoyer moved to suppress his statements to FBI Agent Miller as involuntary.  At the suppression hearing, Agent Miller testified that Cournoyer signed a waiver-of-rights form and  agreed to be interviewed at the county jail, where he was in custody on tribal charges. At the end of the one-and-one-half-hour interview, Agent Miller drafted a summary of Cournoyer's statements

7

which he reviewed, corrected, and signed.  Cournoyer testified that his requests to terminate the interview and to talk to an attorney were denied, and that he only gave a statement because he was placed in fear of losing custody of his children.

The district court denied the motion to suppress.  The court found that Cournoyer was concerned about his children but did not ask to consult with an attorney or to terminate the interview.  Considering the totality of the circumstances and in particular the factors specified in 18 U.S.C. § 3501(b), the court concluded that Cournoyer's will was not overborne by Agent Miller.  On appeal, Cournoyer argues that the court erred in rejecting his "clear and unequivocal testimony" establishing coercion. Having carefully reviewed the district court's factual findings for clear error and its ultimate voluntariness conclusion *de novo,* we conclude that the denial of Cournoyer's motion to suppress must be affirmed.  See United States v. Byrne, 83 F.3d 984, 989 (8th Cir. 1996) (standard of review); United States v. Makes Room For Them, 49 F.3d 410, 414-15 (8th Cir. 1995). We also reject Cournoyer's additional contentions that the district court committed plain error at trial because Agent Miller's testimony included hearsay and was elicited with leading questions.  See United States v. Olano, 507 U.S. 725, 732 (1993).

The judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.