**UNITED STATES of America,**
**Plaintiff,**

v.

**James BAHE, Sr., Defendant.**

**No. 95–421–MV.**

United States District Court,
D. New Mexico.

Nov. 25, 1998.

Ann Steinmetz, John V. Butcher, Federal Public Defender's Office, Albuquerque, NM, for Defendant.

Tara C. Neda, Kathleen Bliss, U.S. Attorney's Office, Albuquerque, NM, for Plaintiff.

### *MEMORANDUM OPINION AND ORDER*

VAZQUEZ, District Judge.

**THIS MATTER** is before the Court on Defendant's Motion for Judgment of Acquittal, Pursuant to Rule 29(c), or, In the Alternative, Motion for New Trial [**Doc. No. 73**]. Following an evidentiary hearing, this Court previously granted Defendant's motion for a new trial for the reasons set forth in its Memorandum Opinion and Order of November 2, 1998 [**Doc. No. 96**]. The Court, having considered the

moving papers, relevant law, and being otherwise fully informed, now finds that Defendant's motion for judgment of acquittal is well taken and will be **GRANTED.** Accordingly, the previous Order of the Court granting a new trial will be modified by this opinion, as explained below.

## BACKGROUND

James Bahe, Sr. was charged by indictment with aggravated sexual abuse of a child who had not attained the age of twelve years, in violation of 18 U.S.C. § 2241(c), said offense alleged to have been committed in Indian Country, in violation of 18 U.S.C. § 1153. Specifically, Bahe was charged with penetration by hand or finger of a genital opening of his niece Leandra N. with intent to abuse, humiliate, harass and degrade, or to arouse and gratify his sexual desire.

At trial, the prosecution's case in chief consisted of three witnesses: (1) Dr. Lisa Sampson–Fang, (2) FBI Agent Gregory Calles, and (3) Arica Charley. Dr. Sampson–Fang testified that she examined Leandra N. on July 6, 1994, at the Crownpoint Indian Health Services clinic. Pursuant to Federal Rule of Evidence 803(4), Dr. Sampson–Fang testified to statements made to her by Leandra. Leandra, age 11, told Dr. Sampson–Fang that she had been in bed the previous evening when she was awakened by someone walking on the floor. She heard a flashlight click off, felt a hand go down the front of her clothing to her vagina and then felt a finger "go inside." Leandra identified Bahe as the perpetrator and stated that he had done this before though she did not know when. Dr. Sampson–Fang also conducted a physical exam of Leandra which failed to reveal anything unusual, although Dr. Sampson–Fang testified that the act described would not necessarily leave any physical traces.

Special Agent Calles testified to certain admission made to him by Bahe. In regards to the night at issue, Bahe told Calles that he had in fact entered the room where Leandra and several other family members were sleeping with a flashlight. Bahe stated that he twice entered the room to care for his baby grandson and on a third occasion entered the room to find his mouthwash or his medication. He further stated that he had "fumbled" around the bed where Leandra was sleeping in search of the baby's bottle, and admitted that he may have accidently touched Leandra in an unknown location, but he adamantly denied touching her in a sexual manner at any time. Pursuant to Federal Rule of Evidence 414, Agent Calles also testified that on further questioning, Bahe admitted that he digitally penetrated another niece, Arica Charley, on another occasion, attempting to blame that incident on the young girl.

Again pursuant to Federal Rule of Evidence 414, Arica Charley testified to the incident of sexual molestation involving her which was not charged in the indictment and was never prosecuted.

Defendant presented several witnesses on his behalf, key among them Leandra N. Leandra testified that she had told Dr. Sampson–Fang and the FBI that Bahe had sexually molested her. However, at trial and under oath, she recanted those statements, testifying that Bahe had not touched her in a sexual manner. Leandra explained that she had been pressured by her aunt, Lolita Bahe, wife of James Bahe, to make the false allegations.

The defense also called as witnesses Matilda Bahe, Leandra's mother, Zelda Cadman Monongye, Leandra's aunt, Lisa Charley, Leandra's sister, and Bobby Negale, another of Leandra's uncles. Each testified that Leandra had never shared the allegations of sexual abuse with them, either before or after July 6th, the date that the accusation was made. On the other hand, several family members testified that Leandra had told them that the accusations were false at various times throughout 1994 and 1995. Each family member also testified that Leandra had never expressed any fear of James Bahe.

In rebuttal, the Government called two witnesses, Genova Nakai, employed by Social Services, and Agent Calles. Nakai testified that she had spoken with Matilda Bahe, Leandra's mother, on July 8, 1994, and that Matilda Bahe was aware at the time that in order for her daughter to return home Nakai would have to make a favorable finding in her investigation of the alleged abuse. Nakai testified that in her opinion Leandra had a close, supportive family. Although not qualified as an expert, Nakai further testified to common characteristics of abused children, including the fact that allegations of abuse are frequently recanted. Next, Agent Calles testified to the prior inconsistent statements of Leandra made to him regarding the July 6th incident, though this evidence was stricken on objection by defense counsel. Based on statements made to him by Leandra and pursuant to Federal Rule of Evidence 414, Agent Calles then testified to a 1991 incident in which Bahe allegedly molested Leandra, an incident which was also not charged in the indictment and never prosecuted.

At the close of the Government's case in chief, Defendant moved for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29. The Court denied the motion. Defendant again moved for judgment of acquittal at the close of evidence. The Court took the motion under advisement and submitted the case to the jury. The jury convicted Defendant as charged on May 7, 1998. The Court subsequently denied Defendant's motion for judgment of acquittal and entered judgment against Defendant. In the motion presently before the Court, Defendant once again renews his motion for judgment of acquittal or, in the alternative for a new trial based on newly discovered evidence. Following a hearing on October 8, 1998, the Court did in fact grant Defendant's motion for a new trial based on newly discovered evidence, as explained in the Court's Memorandum Opinion and Order

of November 2, 1998 [**Doc. No. 96**]. Still pending before the is Defendant's renewed motion for judgment of acquittal.[1]

## STANDARD OF REVIEW

■ In considering a motion for judgment of acquittal under Federal Rule of Criminal Procedure 29, the Court must "view the evidence, both direct and circumstantial, in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine whether that evidence, if believed, would establish each element of the crime." *United States v. Johnson, et al.*, 12 F.3d 1540, 1545 (10th Cir.1993) (citing *United States v. White*, 673 F.2d 299, 301–302 (10th Cir.1982)). "[T]he relevant question is whether ... any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Hollis*, 971 F.2d 1441, 1447 (10th Cir.1992). "The evidence supporting a jury's verdict must be substantial ... raising more than a mere suspicion of guilt." *United States v. Yoakam*, 116 F.3d 1346, 1349 (10th Cir. 1997).

■ When reviewing a motion for judgment of acquittal after a jury verdict, the trial court applies the same standard of review as an appellate court reviewing the sufficiency of the evidence, taking into consideration all of the evidence presented at trial. Wright & Miller, Federal Practice and Procedure, § 467. A trial court "has power to reconsider a timely motion for judgment of acquittal premised on insufficiency of the evidence when the court, which still retains jurisdiction of the case, decides, in considering another of defendant's motions, that its earlier denial of the Rule 29 motion was erroneous." *Arizona v. Manypenny*, 672 F.2d 761, 765–66 (9th Cir.1982).

---

**1.** The Court has not considered any of the evidence presented on the motion for a new trial in ruling on the motion for judgment of acquittal.

## ANALYSIS

■ In the present case, the only substantive evidence of the sexual abuse charged in the indictment was a prior, inconsistent out-of-court statement, recanted at trial by the complaining witness. To this, the prosecution added Defendant's own statements—which merely established the opportunity for him to commit the acts alleged—testimony of a social services worker that abused children frequently recant their accusations, and evidence of prior, uncharged acts of sexual abuse by Defendant. Although the prosecution argued that the complaining witness had been pressured to recant her accusations by a "close" family, the government failed to present any actual evidence of such pressure. Defendant's conviction, thus, is based solely on a single prior, inconsistent out-of-court statement, the fact that he had the opportunity to commit the acts alleged, uncontroverted evidence that he sexually molested another niece in the past, and testimony that children often recant allegations of abuse.

This court has reviewed well over 100 cases challenging the sufficiency of the evidence for a conviction of child sexual abuse and has been unable to find a single case in which a conviction was sustained with as little evidence of the crime charged as in the case at bar. In the overwhelming majority of cases, the complaining witness actually testified to the sexual acts at trial. *See Tome v. United States,* 513 U.S. 150, 153, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995) (rev'd for improper admission of prior consistent statement); *United States v. Castillo,* 140 F.3d 874, 885 (10th Cir. 1998); *United States v. R.D.A.,* 156 F.3d 1245 (10th Cir.1998) (published in table only); *United States v. Norman T.,* 129 F.3d 1099, 1101 (10th Cir.1997); *United States v. Meacham,* 115 F.3d 1488, 1491, 1495 (10th Cir.1997); *United States v. Clark,* 61 F.3d 917 (10th Cir.1995) (published in table only); *United States v. Pike,* 36 F.3d 1011, 1011 (10th Cir.1994); *United States v. Black,* 43 F.3d 1484 (10th Cir.1994) (published in table only); *United States v. Montoya,* 41 F.3d 1516 (10th Cir.1994) (published in table only); *United States v. Trujillo,* 33 F.3d 63 (10th Cir. 1994) (published in table only); *Holloway v. Tansy,* 986 F.2d 1427 (10th Cir.1993) (published in table only); *United States v. Harris,* 940 F.2d 1539 (10th Cir.1991) (published in table only); *Vigil v. Tansy,* 917 F.2d 1277, 1278 (10th Cir.1990) (testified by video deposition); *United States v. Cuch,* 842 F.2d 1173, 1174 (10th Cir.1988); *United States v. McCabe,* 131 F.3d 149 (9th Cir.1997) (published in table only); *United States v. Curley,* 74 F.3d 1246 (9th Cir.1996) (published in table only); *United States v. Gia,* 981 F.2d 1260 (9th Cir.1992) (published in table only); *United States v. Hadley,* 918 F.2d 848, 852 (9th Cir.1990); *United States v. Eagle,* 137 F.3d 1011, 1012–14 (8th Cir.1998); *United States v. Magpie,* 162 F.3d 1165, 1998 WL 453694 (8th Cir.1998) (unpublished); *United States v. Wright,* 119 F.3d 630, 632 (8th Cir.1997); *United States v. Cournoyer,* 118 F.3d 1279, 1281 (8th Cir.1997); *United States v. Rouse,* 111 F.3d 561, 568 (8th Cir.1997); *United States v. Goodlow,* 105 F.3d 1203, 1205 (8th Cir.1997); *United States v. LeCompte,* 99 F.3d 274, 276 (8th Cir.1996) (rev'd for other crimes evidence); *United States v. E.R.B.,* 86 F.3d 129, 129–30 (8th Cir.1996); *United States v. NB,* 59 F.3d 771, 773–74, 779 (8th Cir.1995); *United States v. Whitted,* 11 F.3d 782, 787 (8th Cir.1993) (rev'd for expert comment on credibility of witness); *United States v. Has No Horse,* 11 F.3d 104, 105–107 (8th Cir.1993); *United States v. Balfany,* 965 F.2d 575, 577 (8th Cir.1992); *Kerr v. Caspari,* 956 F.2d 788, 789 (8th Cir.1992); *United States v. Bad Yellow Hair,* 972 F.2d 355 (8th Cir.1992) (published in table only); *United States v. Demarrias,* 876 F.2d 674, 675 (8th Cir.1989); *United States v. Provost,* 875 F.2d 172, 174 (8th Cir.1989); *United States v. Peden,* 961 F.2d 517, 523 (5th Cir.1992); *United States v. Rynning,* 47 M.J. 420, 421 (Armed Forces App.1998); *United States v. Barrow,* 42 M.J. 655, 664 (Air Force App.1995); *United States v. Heimer,* 34 M.J. 541, 543, 548 (Air Force

Military Rev.1991); *United States v. Rath,* 27 M.J. 600, 604 (Army Military Rev.1988); *United States v. White,* 25 M.J. 50, 51 (Military App.1987); *United States v. LeMere,* 22 M.J. 61, 63–64 (Military App.1986); *Caban v. Tillery,* 1998 WL 295573 (D.Kan.1998) (unpublished); *Cummings v. Lowell,* 1995 WL 580042 (D.Kan.1995) (unpublished); *Rath v. Berrong,* 1992 WL 404232 (D.Kan.1992) (unpublished); *see also* Dana D. Anderson, Note: Assessing the Reliability of Child Testimony in Sexual Abuse Cases, 69 S.Cal.L.Rev. 2117, 2118 (1996) (noting that the majority of child sexual abuse cases are based primarily if not solely on the testimony of the complaining witness).

In many of these cases, courts upheld convictions where children recanted their accusations before trial but nevertheless reasserted their original account at trial. *See United States v. Harris,* 940 F.2d 1539 (10th Cir.1991) (published in table only); *United States v. Butterfly,* 72 F.3d 136 (9th Cir.1995) (published in table only); *United States v. Miner,* 131 F.3d 1271, 1272–74 (8th Cir.1997); *United States v. St. John,* 851 F.2d 1096, 1097 (8th Cir. 1988); *Humphrey v. Cain,* 120 F.3d 526, 527 (5th Cir.1997) rev'd on rehearing ·en banc for erroneous reasonable doubt instruction, 138 F.3d 552 (5th Cir.1998); *United States v. Provost,* 777 F.Supp. 774, 775–76, 778 (D.S.D.1991); *United States v. Anderson,* 47 M.J. 576, 578 (Navy–Marine Corps App.1997); *Oliver v. United States,* 711 A.2d 70, 71–72 (D.C.App.1998); *People v. Eppens,* 948 P.2d 20, 25 (Colo.App.1997) (rev'd for improper credibility evidence); *State v. Childers,* 1996 WL 729877 (Ohio App. 10 Dist. 1996) (unpublished).

In some cases, even when the complaining witness did testify, the court vacated the conviction after concluding that the child's account was too inconsistent to be sufficient evidence on which to base the conviction. *See United States v. Plenty Arrows,* 946 F.2d 62, 64–66 (8th Cir.1991) (conviction reduced to lesser included); *United States v. Knox,* 46 M.J. 688, 690–96 (Navy–Marine Corps App.1997) (state-

ments improperly admitted pursuant to 803(4) and without statements in court testimony of children insufficient to sustain conviction.); *United States v. Moore,* 32 M.J. 170, 172–73 (Military App.1991); *United States v. Stidman,* 29 M.J. 999, 1000–1002 (Air Force Military Rev.1990); *State v. Aldridge,* 120 Ohio App.3d 122, 697 N.E.2d 228, 234 (Ohio App.1997); *State v. Chamberlain,* 137 N.H. 414, 628 A.2d 704, 705 (N.H.1993); *State v. Smith,* 508 N.W.2d 101, 103–105 (Iowa App.1993); *People v. Schott,* 145 Ill.2d 188, 164 Ill.Dec. 127, 582 N.E.2d 690, 699 (Ill.1991).

Although the majority of sexual abuse convictions are in fact based on the in-court testimony of the complaining witness, there are cases in which convictions have been upheld despite the failure of the complaining witness to testify. In most of these cases, however, the out-of-court statements by the complaining witness were corroborated by the defendant's own admission of guilt, physical evidence, and/or eye witnesses to the abuse. *See Myatt v. Hannigan,* 910 F.2d 680, 682 (10th Cir.1990) (physical evidence); *United States v. Gnirke,* 108 F.3d 339 (9th Cir. 1997) (published in table only; physical evidence); *United States v. Brady,* 9 F.3d 1554 (9th Cir.1993) (published in table only; physical evidence); *United States v. Looking,* 156 F.3d 803, 804–808 (8th Cir. 1998) (physical evidence); *United States v. Black Cloud,* 101 F.3d 1258, 1260 (8th Cir. 1996) (physical evidence); *United States v. Longie,* 984 F.2d 955, 957–58 (8th Cir.1993) (physical evidence and one complaining witness); *Arcoren v. United States,* 929 F.2d 1235, 1240 (8th Cir.1991) (physical injuries; one conviction affirmed, one rev'd); *United States v. Bell,* 993 F.2d 427, 429–30 (5th Cir.1993) (physical evidence); *United States v. Hughes,* 48 M.J. 700, 707–708 (Armed Forces App.1998) (eye witness and confession); *United States v. Muirhead,* 48 M.J. 527, 538 (Navy–Marine Corps. App.1998) (physical evidence); *United States v. Cabral,* 47 M.J. 268, 269 (Armed Forces App.1998) (physical evidence); *United States v. Johnson,* 45 M.J.

666, 669 (Army App.1997) (eye witness); *United States v. Casteel*, 45 M.J. 379, 385 (Armed Forces App.1996) (three in court witnesses and physical evidence); *United States v. Ureta*, 44 M.J. 290, 296 (Armed Forces App.1996) (physical evidence and incriminating statements); *United States v. Hansen*, 36 M.J. 599, 607–608 (Air Force Military Rev.1992) (confession; one conviction aff'd, one rev'd); *United States v. Moreno*, 36 M.J. 107, 109 (Military App. 1992) (confession); *United States v. Arnold*, 25 M.J. 129, 132 (Military App.1987) (confession); *United States v. Carter*, 1997 WL 754088 (N.D.Ill.1997) (several complaining witnesses testified, one recanted); *Nunn v. State*, 845 P.2d 435, 441 (Alaska App.1993) (incriminating statements); *Clifton v. State*, 758 P.2d 1279, 1282 (Alaska App.1988) (incriminating statements); *People v. Housley*, 6 Cal.App.4th 947, 953–54, 8 Cal.Rptr.2d 431 (1992) (physical evidence and incriminating statements); *State v. Borrelli*, 227 Conn. 153, 629 A.2d 1105, 1109 (Conn.1993) (battered woman case with physical evidence); *Wallace v. State*, 228 Ga.App. 686, 492 S.E.2d 595, 596–97 (Ga.App.1997) (eye witness); *People v. Bitting*, 224 A.D.2d 1012, 1013, 637 N.Y.S.2d 820 (N.Y.1996) (confession); *People v. Philipp*, 106 A.D.2d 681, 681–82, 484 N.Y.S.2d 138 (N.Y.1984) (confession); *State v. Orosco*, 113 N.M. 780, 833 P.2d 1146, 1153–54 (N.M.1992) (incriminating statements and testimony of complaining witness at trial); *Rodriguez v. State*, 1996 WL 548156 (Tex.App. Austin1996) (physical evidence and confession); *Chambers v. State*, 805 S.W.2d 459, 460–61 (Tex.Crim. App.1991) (physical evidence); *State v. Seale*, 853 P.2d 862, 865 (Utah 1993) (physical evidence); *State v. Swan*, 114 Wash.2d 613, 790 P.2d 610, 616–24 (Wash.1990) (physical evidence, behavior of three year old victim, cross-disclosures by both victims).

In other cases, the complaining witness re-affirmed the truth of his or her out-of-court statements, though the child was unwilling to actually repeat the statements in court. *See State v. Seale*, 853 P.2d 862,

865–66 (Utah 1993); *State v. Graif*, 1992 WL 95876 (Minn.App.1992).

In only a fraction of available cases did the government seek a conviction based on nothing more than a prior out-of-court statement which the complaining witness actually recanted at trial. Some of these cases have been reversed on appeal because the out-of-court statement was improperly admitted or was admitted as impeachment but not as substantive evidence, leaving absolutely no evidence of the alleged offense. *See United States v. Siroky*, 44 M.J. 394, 399–401 (Armed Forces App.1996); *United States v. Crayton*, 17 M.J. 932, 934 (Air Force Military Rev.1984); *United States v. Pollard*, 38 M.J. 41, 50–51 (Ct of Military App.1993); *Commonwealth v. Costello*, 411 Mass. 371, 582 N.E.2d 938, 939 (Mass.1991) (no substantive evidence to corroborate confession); *People v. Zurak*, 168 A.D.2d 196, 199–200, 571 N.Y.S.2d 577 (N.Y.1991); *Felix v. State*, 109 Nev. 151, 849 P.2d 220, 243 (Nev.1993); *State v. Mayer*, 146 Or.App. 86, 932 P.2d 570, 576–77 (Or.App.1997); *State v. Paster*, 524 A.2d 587, 591 (R.I.1987); *State v. Carol M.D.*, 89 Wash.App. 77, 948 P.2d 837, 843 (Wash.App.1997).

In cases in which an inconsistent out-of-court statement was admitted as substantive evidence of the charged sexual acts and no other evidence was presented, state and federal courts have nearly uniformly concluded that there was insufficient evidence to support the conviction. *See United States v. Drake*, 1995 WL 935006 (Navy–Marine Corps. Crim.App.1995) (unpublished opinion); *Brower v. State*, 728 P.2d 645, 646–48 (Alaska App.1986); *Acosta v. State*, 417 A.2d 373, 375–77 (Del.1980) (conviction aff'd. for acts testified to in-court, rev'd for acts for which only out-of-court statements were presented); *Lowe v. State*, 668 So.2d 274, 275 (Fla.App.1996); *Anderson v. State*, 655 So.2d 1118, 1119–20 (Fla.1995); *State v. Green*, 667 So.2d 756, 760–61 (Fla.1995); *State v. Werneke*, 958 S.W.2d 314, 317–20 (Mo.App.1997) (judg-

ment of acquittal entered on counts for which only inconsistent out-of-court statements presented, judgment aff'd. as to counts on for which complaining witness actually testified); *State v. Pierce,* 906 S.W.2d 729, 733–37 (Mo.App.1995); *State v. White Water,* 194 Mont. 85, 634 P.2d 636, 637–39 (Mont.1981); *State v. Ramsey,* 782 P.2d 480, 482–84 (Utah 1989); *see also United States v. Orrico,* 599 F.2d 113 (6th Cir.1979) (check fraud conviction based only on prior inconsistent statement rev'd); *In re Miguel,* 32 Cal.3d 100, 105–107, 185 Cal.Rptr. 120, 649 P.2d 703 (1982) (conviction for burglary rev'd where based only on recanted out-of-court statement); *State v. Maestas,* 92 N.M. 135, 584 P.2d 182 (N.M.App.1978) (conviction for physical abuse of child rev'd where only evidence presented was out-of-court statement); *State v. Robar,* 157 Vt. 387, 601 A.2d 1376 (Vt.1991) (burglary conviction based only on prior inconsistent statement rev'd); *State v. Sexton,* 115 Wis.2d 697, 339 N.W.2d 367 (Wis.App.1983) (published in table only; conviction for operating vehicle without license based solely on unsworn statement rev'd).

This Court has located only a single case in which a conviction for child sexual abuse based on solely an out-of-court statement, recanted at trial, was affirmed: *Ramsey v. State,* 214 Ga.App. 743, 448 S.E.2d 790, 791–92 (Ga.App.1994). The conviction in *Ramsey* rested on the testimony of a cousin of the complaining witness who related accusations made to her by the complaining witness, the testimony of six siblings or cousins who had previously been sexually abused by the defendant, and the testimony of the complaining witnesses brother who heard the defendant make lewd comments about the complaining witness and saw the defendant enter the bathroom to bathe the complaining witness. The Georgia Court of Appeal found this to be sufficient evidence to sustain the conviction.

In contrast, the majority of state courts to address the issue have gone so far as to adopt a per se rule that a prior inconsistent statement, recanted at trial, is alone insufficient to support a conviction. *Brow-*

*er v. State,* 728 P.2d 645, 648 (Alaska App. 1986); *In re Miguel,* 32 Cal.3d 100, 105–107, 185 Cal.Rptr. 120, 649 P.2d 703 (Cal. 1982); *Lowe v. State,* 668 So.2d 274, 275 (Fla.App.1996); *State v. Green,* 667 So.2d 756, 760–61 (Fla.1995) ("a prior inconsistent statement standing alone is insufficient as a matter of law to prove guilt beyond a reasonable doubt"); *State v. Pierce,* 906 S.W.2d 729, 733–37 (Mo.App. 1995) ("a conviction based solely on a prior statement, though admissible via statute, falls short of due process protection"); *State v. Pinkerton,* 270 Mont. 287, 891 P.2d 532, 535 (Mont.1995); *State v. White Water,* 194 Mont. 85, 634 P.2d 636, 639 (Mont.1981); *State v. Ramsey,* 782 P.2d 480, 482–84 (Utah 1989) ("an out-of-court statement which is denied at trial by the declarant is insufficient by itself to sustain a conviction"); *State v. Sexton,* 115 Wis.2d 697, slip op. 1, 339 N.W.2d 367 (Wis.App. 1983) (published in table only) ("Unsworn pretrial witness statements, standing alone, do not prove guilt beyond a reasonable doubt").

Similarly, three states have declined to adopt a per se rule but have concluded that a prior inconsistent statement may be sufficient to support a conviction only if it possesses certain indicia of reliability, including having been made under oath or having been preserved in a writing signed by the witness. *State v. Tomas,* 84 Hawaii 253, 933 P.2d 90, 98–100 (Hawaii App.1997) (battered woman case, held prior statement sufficiently reliable where made under oath, but noting that "convictions based solely on prior inconsistent statements raise serious due process and confrontation clause issues."); *State v. Robar,* 157 Vt. 387, 601 A.2d 1376 (Vt.1991) (burglary conviction rev'd because statement was not sufficiently reliable to support conviction even though made under oath); *State v. Mancine,* 124 N.J. 232, 590 A.2d 1107, 1119 (N.J.1991); *see also Acosta v. State,* 417 A.2d 373, 375–77 (Del.1980) (holding that jury must be given special cautionary instruction when only evidence is a prior inconsistent statement and re-

versing conviction). The Supreme Court of New Jersey, which first adopted this approach and whose holding was followed in Vermont and Hawai'i, articulated fifteen factors for the trial court to consider in assessing the reliability of an inconsistent out-of-court statement presented as the only substantive evidence of the offense in order to determine whether the statement was sufficient to sustain the conviction. *Mancine*, 590 A.2d at 1119.

Each of these state cases has followed the reasoning of the only federal case to address this issue, *United States v. Orrico*, 599 F.2d 113 (6th Cir.1979).[2] The defendant in *Orrico* was convicted of transporting fraudulent checks in interstate commerce based solely on grand jury testimony which the witness at trial failed to recollect. The Sixth Circuit Court of Appeals reversed the conviction, holding that,

> when [out-of-court statements are] the only source of support for the central allegations of the charge, especially when the statements barely, if at all, meet the minimal requirements of admissibility, we do not believe that a substantial factual basis as to each element of the crime providing support for a conclusion of guilt beyond reasonable doubt has been offered by the Government.

*Id.* at 118. The *Orrico* Court did not adopt a per se rule that a prior inconsistent statement was insufficient to support a conviction but stated, "[i]t is doubtful, however, than in any but the most unusual case, a prior inconsistent statement alone will suffice to support a conviction since it is unlikely that a reasonable juror could be convinced beyond a reasonable doubt by such evidence alone." *Id.*

All of these courts have recognized that a conviction based solely on an inconsistent, unsworn and uncross-examined out-of-court statement runs ·contrary to the most basic premise of our criminal justice system. Long ago the Supreme Court expressed its fear that the admission of unsworn prior inconsistent statements "would allow men to be convicted on unsworn testimony of witnesses—a practice which runs counter to the notions of fairness on which our legal system is founded." *Bridges v. Wixon*, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103, p. (1945); *see also United States v. Shoupe*, 548 F.2d 636, 643–44 (6th Cir.1977) ("Foremost among [the notions of fairness upon which our system is based] is the principle that man should not be allowed to be convicted on the basis of unsworn testimony." Quoting *United States v. Morlang*, 531 F.2d 183, 190 (4th Cir.1975)). Quite recently, the Supreme Court reversed a conviction from this district due to the improper admission of prior consistent statements in a child sexual abuse case, cautioning that with the admission of such evidence, "the whole emphasis of the trial could shift to the out-of-court statements, not the in-court ones." *Tome*, 513 U.S. at 165, 115 S.Ct. 696.

Further, when the Federal Rules of Evidence were revised to permit the use of a prior. inconsistent statement as substantive evidence, *see* Rule 801(d)(1)(A), scholars were quick to observe that such evidence would likely be insufficient to support a conviction alone. The Senate Committee Report on the proposed rule states,

> [i]t would appear that some of the opposition to this Rule is based on a concern that a person could be convicted solely upon evidence admissible under this Rule. The Rule, however, is not addressed to the question of the sufficiency of evidence to send a case to the .jury, but merely as to its admissibility. . Fac-

**2.** In *Ticey v. Peters*, 8 F.3d 498, 502–503 (7th Cir.1993), the complaining witness' testimony and physical evidence demonstrated that a rape had occurred though at trial the witness stated that she could not identify the perpetrator. The only evidence as to identity was a prior out-of-court statement which the wit- ness did not deny but stated she could not affirm at trial. Thus, the substantive evidence of the crime in *Ticey* did not rest entirely on an out-of-court statement and the statement proffered was not inconsistent with the witness' testimony.

tual circumstances could well arise where, if this were the sole evidence, dismissal would be appropriate.

S.Rep. No. 1277, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 7051, 7063 n. 21. (483–84). Likewise, the reporter for the Advisory Committee that drafted Rule 801(d)(1)(A) stated in a letter to the House subcommittee that " '... if a judge were confronted with a situation ... in which the entire case for the prosecution was a prior inconsistent unsworn statement it would be difficult indeed to see how he could avoid directing a verdict.' " Quoted in Blakey, Substantive Use of Prior Inconsistent Statements Under the Federal Rules of Evidence, 64 Ky.L.J. 3, 21 (1975). And Professor Weinstein observed that,

> [t]heoretically, a party may be able to make out a prima facie case even if the only evidence is a previous inconsistent statement of this type.... In a criminal prosecution, however, it is unlikely that a prior inconsistent statement alone will suffice to support a conviction, since a reasonable juror usually could not be convinced beyond a reasonable doubt by such evidence alone.

4J Weinstein & M. Berger, Weinstein's Evidence ¶ 801(d)(1)(A)[01], at 141–42 (1995) (footnotes and quotation marks removed).

The central difficulty with basing a conviction on nothing more than an out-of-court statement which has been recanted at trial is that the fact finder has no logical basis for determining which statement is true and may even be falsely persuaded by the presentation of the out-of-court statement.

> When a trier of fact decides to believe a witness' prior out-of-court assertions rather than that same witness' present in-court contradiction of those earlier remarks, that decision often is based solely on guess or intuition, not credible facts. This inherent danger is compounded when that prior inconsistent statement is the only prosecution evidence against

the accused and becomes the sole basis for conviction.

Stanley Goldman, Guilt by Intuition: The Insufficiency of Prior Inconsistent Statements to Convict, 65 N.C.L.Rev. 1, 2 (1986). As Professor Goldman points out, the witness' prior inconsistent statement gains credibility by being repeated in court by a more credible spokes-person, such as a doctor or law enforcement officer. *Id.* at 21. Further, the jury may draw negative inferences from the recanting witnesses demeanor, failing to recognize that his or her demeanor may have been just as poor when the statements were first made. *Id.* Thus, "the witness' unsatisfactory trial demeanor contrasted with the more credible demeanor of the person relating the witness' prior statement may create an illusion of unwarranted reliability associated with the earlier statement." *Id.* at 22.

The most basic premise of our judicial system is the notion that truth will be discovered by bringing witnesses into court, requiring them to take an oath, and submitting their testimony to the rigors of cross-examination. As the Florida Supreme Court succinctly stated, "the risk of convicting an innocent accused is simply too great when the conviction is based entirely on prior inconsistent statements." *State v. Green,* 667 So.2d at 761. Similarly, the Missouri Supreme Court explained,

> [t]he United States Supreme Court's language in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), looms like a cloud over the idea that, somehow, a conviction based solely on a out-of-court inconsistent statement, satisfies due process. Due process limits the jury's ability to convict. *Id.* at 319, 99 S.Ct. at 2789. The Court has long acknowledged that due process prohibits a criminal conviction except on proof beyond a reasonable doubt. *Id.* at 316, 99 S.Ct. at 2789. This rule requires more than a ritualistic trial. *Id.*

*State v. Pierce,* 906 S.W.2d at 735.

This Court has no intention of adopting a per se rule regarding the sufficiency of a

prior inconsistent statement to support a conviction, nor will this Court conclude that the evidence in this case is insufficient based on a rigid application of such a rule. The Court has reviewed the cases and authorities discussed above because it is highly instructive that, with the single exception of the state of Georgia, every state court to address the issue, the single federal court to address the issue, and respected legal scholars have all concluded that a prior inconsistent statement which is neither sworn nor reduced to writing is insufficient evidence on which to base a conviction.

In the present case, the prosecution presented Leandra's out-of-court statement to Dr. Sampson–Fang as the only substantive evidence that a crime had been committed and that Defendant Bahe was the responsible party. This statement was not sworn, nor reduced to writing by Leandra, nor recorded in any manner. It was not subjected to cross-examination at the time it was made, nor was the witness' demeanor observed by Defendant or any fact finder. Moreover, the statement was never repeated to any of Leandra's family members, or apparently anyone else other than the FBI Agent called to the hospital to investigate. The statement was admitted pursuant to Federal Rule of Evidence 803(4) as a statement made for diagnosis after the Court concluded that Leandra understood that Dr. Sampson–Fang would be treating her. However, while this finding was sufficient to establish the substantive admissibility of the statement, it provides only minimal support to the conclusion that the statement was true and not a fabrication.

Further, although the prosecution in this case intimated that family members pressured Leandra to change her story and recant the allegations of abuse, the prosecution failed to present actual evidence of such pressure or coercion. *In contrast, see United States v. Miner*, 131 F.3d 1271, 1272–74 (8th Cir.1997); *United States v. St. John*, 851 F.2d 1096, 1097 (8th Cir. 1988); *United States v. Provost*, 777

F.Supp. 774, 775–76, 778 (D.S.D.1991); *People v. Housley*, 6 Cal.App.4th 947, 954, 8 Cal.Rptr.2d 431 (1992); *Brown v. State*, 175 Ga.App. 246, 333 S.E.2d 124, 125 (Ga. App.1985); *State v. Pierce*, 906 S.W.2d 729, 732 (Mo.App.1995). Similarly, the prosecution relied heavily on the testimony of Nakai, a social services worker, that children often recant allegations of abuse. However, as the Court of Military Review observed in *Drake, supra*, 1995 WL 935006 at 4, such testimony does establish that the allegation here are in fact true:

> [T]he expert testimony does not explain how often children make up allegations of this nature. The expert conceded that while it is not inconsistent for an abused child to retract allegations even though they are true, it is also possible for a child to make up such allegations and retract them in an effort to tell the truth ... The expert's testimony does little to help us decide which scenario is more probable in this case.

*Id.* at 4. Finally, the prosecution asserts that Defendant's own statements establish that he had the opportunity to commit the acts alleged. But evidence of an opportunity to commit the crime falls far short of establishing that a crime was in fact committed. *See State v. Pierce*, 906 S.W.2d 729, 735 (Mo.App.1995); *State v. Maestas*, 92 N.M. 135, 584 P.2d 182 (N.M.App.1978). It is also interesting to note that although defendant readily admitted to having sexual contact with Arica Charley, he adamantly denied any sexual contact with Leandra. Given Leandra's in-court testimony, which was taken under oath and subject to cross-examination and which was diametrically opposed to her out-of-court statements, and the lack of any other evidence corroborating the statements or demonstrating their reliability, the Court concludes that the out-of-court statement alone is insufficient to establish beyond a reasonable doubt that Bahe committed the alleged acts.

In the present case, the probable reason why the jury convicted despite the paucity

of evidence as to the acts charged is all too apparent: the uncontroverted testimony that Bahe had previously sexually molested another niece. Evidence of Defendant's prior sexual misconduct was admitted pursuant to the newly adopted Rule 414. This Court hardly needs to restate the long recognized risk that a jury when presented with evidence of past bad acts will convict not based on evidence that the defendant did the acts charged but based on the conclusion that he is a bad person or to punish him for his past misdeeds. In cases such as this one, involving highly emotional charges of sexual abuse on a minor child, that risk is indeed grave. As the Arizona Court of Appeals observed, "[e]vidence of prior sexually aberrant acts is of such a highly prejudicial nature that it makes the guilty verdict 'almost a formality.' Jurors hearing evidence of prior sexual misconduct may assume too readily that the past misconduct is conclusive proof of the present charge." *State v. Hopkins,* 177 Ariz. 161, 866 P.2d 143, 147 (Ariz.App.1993) (citations omitted). While the jurors in this case were entitled to consider this evidence in determining whether Bahe in fact committed the acts alleged, they were not entitled to convict him based on their assessment of him as a person or based on what he has done in the past. *See United States v. Castillo,* 140 F.3d 874, 883 (10th Cir.1998) (admission of past crimes evidence under Fed. R.Evid. 414 to prove propensity constitutional); *see also United States v. LeCompte,* 99 F.3d 274, 279 (because case was a credibility contest between defendant and complaining witness, improper admission of prior sexual abuse of another child was highly prejudicial and not harmless error).

Further, it must be noted that almost none of the evidence presented in the case would have been admissible at trial just twenty years ago. The hearsay exception for statements made for medical diagnosis had not yet been extended to interviews for sexual abuse and did not encompass accusations of who caused the injury. Anderson, Assessing the Reliability of Child Testimony, at 2125–26; Robert G. Marks, Note: Should We Believe the People Who Believe the Children?: The Need for a New Sexual Abuse Tender Years Hearsay Exception Statute, 32 Harv.J. on Legisl. 207, 230–33 (1995); Meredith Felise Sopher, Note: "The Best of All Possible Worlds": Balancing Victims' and Defendants' Rights in the Child Sexual Abuse Case, 63 Fordham L.Rev. 633, 654–55 (1994). Prior acts of sexual abuse were inadmissible. And testimony that children often recant accusations of abuse was simply unavailable as no research had been done into this area. Anderson, Assessing the Reliability of Child Testimony, at 2122; Rosemary L. Flint, Note: Child Sexual Abuse Accommodation Syndrome: Admissibility Requirements, 23 Am.J.Crim.L. 171, 174–178 (1995); Sopher, The Best of All Possible Worlds, at 651–52.

Yet, it must also be noted that the rules were changed for a reason. Child sexual abuse is "one of the most difficult crimes to detect and prosecute," often leaving no physical evidence or third party witnesses. *Pennsylvania v. Ritchie,* 480 U.S. 39, 60, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987); *Tome,* 513 U.S. at 165–67, 115 S.Ct. at 705. In most cases, the word of the child is pitted against that of the adult. Clay Edwards, Note: The Reliability of Out of Court Statements By Child Victims of Sexual abuse: Evaluating Consistency Via the Process of Disclosure, 33 U. Louisville J.Fam.L. 685, 687–88 (1995); Marks, Should We Believe, at 215–16; Sopher, The Best of All Possible Worlds, at 644–45; Flint, Child Sexual Abuse Accommodation Syndrome, at 178–179. Further, the child frequently experiences negative repercussions as a result of the accusations and may be ·under immense pressure from family members to recant. Edwards, The Reliability of Out of Court Statements, at 699; Marks, Should We Believe, at 215–16; Flint, Child Sexual Abuse Accommodation Syndrome, at 175–76. Evidentiary rules, devised long before child sexual abuse was generally acknowledged, simply failed to

account for the dynamics of proof for this kind of crime. This Court does not dispute that change was long over due. But, as a result of these revisions of the rules of evidence, courts are now confronted for the first time with the vexing problem of cases such as this one in which the prosecution seeks to piece together a conviction based on an inconsistent out-of-court statement, past sexual abuse, and testimony that children often recant these allegations.

This Court, like all others, is extremely reluctant to set aside a jury verdict convicting an adult of sexual abuse on a minor child. Indeed, on setting aside a conviction for child sexual abuse, the Court of Military Appeals, observed,

> there are two kinds of courage involved in the profession of arms and the profession of law. On the one hand, many are called upon for physical courage. On the other hand, judges are called upon from time to time for moral courage— the courage to subordinate a personal philosophy of the law or private distaste of child abuse to decide an issue logically and dispassionately.

*United States v. Stidman*, 29 M.J. at 1002. It is perhaps hyperbolic to compare the entry of judgment of acquittal with being called to defend one's nation at war. But, the passage aptly demonstrates the difficulty of a case such as this one. As another Military Review panel observed,

> [o]ptimally, every person who criminally abuses a child, physically or sexually, would be caught, convicted, and punished appropriately for the offense. As a result, the certainty of detection, conviction, and punishment would act as a strong deterrent, protecting children from such abuse. But the rules of evidence have been developed painstakingly over centuries to ensure, to the extent it is humanly possible, the reliability of convictions. The rules of evidence cannot be overlooked, set aside, or circumvented in the zeal to prosecute any crime, no matter how heinous. In a court of law the ends never justify the means. It is our responsibility to overturn the results

of well-meaning efforts to use manners of proof which do not meet the standards of admissibility established by the rules of evidence regardless of the nature of the offense.

*United States v. Knox*, 46 M.J. at 696.

As the Supreme Court recently stated "Courts must be sensitive to the difficulties attendant upon the prosecution of alleged child abusers. In almost all cases a youth is the prosecution's only eye witness. But this Court cannot alter evidentiary rules merely because litigants might prefer different rules in a particular class of cases." *Tome*, 513 U.S. at 165–67, 115 S.Ct. at 705 (quotation marks and citation removed). Likewise, the most basic component of due process in our system of criminal justice—the requirement that the government must prove its case beyond a reasonable doubt—cannot be disregarded, no matter how offensive the crimes alleged. This Court cannot allow a conviction to stand "based on a mere suspicion or possibility of guilt." *United States v. Yoakam*, 116 F.3d at 1349; *United States v. Plenty Arrows*, 946 F.2d at 65. The Government has simply failed to demonstrate anything more in this case.

Because any rational trier of fact would necessarily retain doubt, a reasonable and rational doubt, as to Defendant Bahe's guilt of the offense charged, the conviction must be set aside. Accordingly, pursuant to Federal Rule of Criminal Procedure 29(d), the previous ruling of the Court granting Defendant a new trial will be made conditional on appellate review of the present judgment of acquittal. Should the Court of Appeals reverse the present judgement of acquittal, then the new trial shall proceed unless the appellate court has otherwise ordered.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment of Acquittal, Pursuant to Rule 29(c), Or, In the Alternative, Motion for New Trial [**Doc. No. 73**] is hereby **GRANTED**. The Court

hereby enters Judgment of Acquittal in this case. Pursuant to Federal Rule of Criminal Procedure 29(d), the Court hereby conditionally grants a new trial. Should the Court of Appeals reverse the present holding, the new trial shall proceed unless otherwise ordered by the appellate court. The previous Opinion and Order of the Court of November 2, 1998 [**Doc. No. 96**], granting Defendant a new trial, is accordingly modified to be consistent with this decision.